UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:25-CV-00477-MEO-DCK

| | |
|---|---|
| TALEKA ESIET,<br><br>Plaintiff,<br><br>v.<br><br>CAROMONT HEALTH, INC.,<br><br>Defendant. | <u>MEMORANDUM & ORDER</u> |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 13). For the reasons set forth below, the Court will grant in part and deny in part the motion.

## I. BACKGROUND

In 2018, Plaintiff Taleka Esiet began working for Defendant Caromont Health, Inc., as a registered nurse ("RN") Temporary Assignment. (Doc. Nos. 14-3 at 2; 14-5 at 15:21–22). Defendant employed Plaintiff in 12-week assignments memorialized by Defendant's "Temporary Personnel Commitment Form." (Doc. No. 14-6).

During her employment, Plaintiff twice sought leave pursuant to the Family and Medical Leave Act ("FMLA"), which Defendant approved both times. In March 2023, Defendant approved Plaintiff's first request for FMLA on an intermittent leave basis. (Doc. No. 19-17). Defendant's approval letter outlined that Plaintiff had expected leave to continue until on or about September 15, 2023. *Id.* Plaintiff testified she applied for intermittent leave for migraines, anxiety, depression, and back pain caused by diastasis recti. (Doc. No. 19-2; Esiet Dep. at 94:14–18). On July 5, 2023,

Defendant approved Plaintiff's FMLA request for continuous leave beginning on July 17, 2023, continuing until on or about August 22, 2023. (Doc. No. 19-14). Plaintiff testified that she requested continuous FMLA leave for a surgical procedure in the summer of 2023. (Doc. No. 19-2 at 94:5–13).

On July 18, 2023, Plaintiff underwent surgery at Mia Aesthetics, a plastic surgery center in the Atlanta, Georgia area. (Doc. No. 14-5 at 112:3–5, 113:25–114:6, 143:8–12). The surgical procedure amounted to a "mommy makeover," which included "an extended tummy tuck with muscle repair." (Doc. No. 26-3). This involved tightening the abdominal muscles, removing the excess skin, and removing any excess skin around the breasts. (Doc. No. 14-5 at 112:8–113:7). The procedure did not require an inpatient stay. (Doc. No. 14-5 at 114:19–21).

While Plaintiff was out on continuous FMLA leave, Defendant terminated Plaintiff's employment via a letter dated August 17, 2023. (Doc. No. 14-3). The letter cited "recent budget cuts" as the reason for the non-renewal of Plaintiff's employment. *Id.* Because Plaintiff was "currently out on continuous FMLA leave through August 22, 2023," the letter provided that her "termination date will be August 22, 2023." *Id.*

On October 4, 2023, Plaintiff filed an EEOC charge for retaliation and disability under the ADA. (Doc. No. 1-1 at 18–19). The EEOC issued a right to sue letter on February 4, 2025. *Id.* at 21–22. On May 23, 2025, Plaintiff filed suit against Defendant in Mecklenburg County Superior Court. (Doc. No. 1-1). Defendant removed the action to this Court on July 2, 2025. (Doc. No. 1).

Plaintiff asserts four causes of action against Defendant. First, Plaintiff alleges

an FMLA interference claim, arguing that Defendant interfered with Plaintiff's FMLA rights by discouraging her from taking FMLA leave and failing to restore her to her position at the expiration of her leave. (Doc. No. 1-1 at 11–12). Second, Plaintiff argues Defendant engaged in unlawful retaliation in violation of the FMLA by subjecting her to harassment and a hostile work environment and by terminating her. *Id.* at 12–13. Third, Plaintiff alleges three violations of the Americans with Disabilities Act for failure to accommodate, discrimination, and retaliation. *Id.* at 13–15. Lastly, Plaintiff alleges a North Carolina state law claim for wrongful discrimination in violation of public policy, N.C. Gen. Stat. §143.422.1 *et seq. Id.* at 15. On May 4, 2026, Defendant moved for summary judgment on all of Plaintiff's claims. (Doc. No. 13). The motion is ripe for disposition.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner Constr. Co.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *8.929*

*Acres of Land*, 36 F.4th at 252 (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," summary judgment is warranted); *see also United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022) (same). "If the movant satisfies his initial burden to demonstrate 'an absence of evidence to support the nonmoving party's case,' the burden shifts to the nonmovant to 'present specific facts showing that there is a genuine issue for trial.'" *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 247–48). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence

of a scintilla of evidence." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *See Anderson*, 477 U.S. at 255. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (citation modified). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Wright & Miller's Federal Practice & Procedure § 2728 (3d ed. 1998)). The key question on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

For the reasons explained below, the Court will grant in part and deny in part Defendant's motion. First, Plaintiff's FMLA interference and retaliation claims survive summary judgment because genuine disputes of material fact exist as to those claims. Second, summary judgment is granted in favor of Defendant as to (1) Plaintiff's ADA claims for discrimination, failure to accommodate, and retaliation; and (2) her claim for wrongful discharge in violation of public policy.

## A. Plaintiff's FMLA Claims

Plaintiff brings two claims under the FMLA: interference and retaliation.

### *1. FMLA Interference*

The FMLA entitles employees with qualifying medical conditions to take up to twelve weeks of unpaid leave in a twelve-month period. *See* 29 U.S.C. § 2612(a)(1); *see also Rhoads v. F.D.I.C.*, 257 F.3d 373, 381–84 (4th Cir. 2001) (explaining FMLA benefits). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). To allege an FMLA interference claim, an employee must establish that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015), *abrogated on other grounds by Hansley v. DeJoy*, No. 23-1426, 2024 WL 4947275 (4th Cir. Dec. 3, 2024) (citing *Muldrow v. City of St. Louis, Missouri,* 601 U.S. 346, 357 (2024)).

For the reasons explained below, the Court finds there are genuine disputes over facts material to each element of Plaintiff's FMLA interference claim. Accordingly, the Court denies summary judgment as to this claim.

a. Element One: Entitlement to FMLA Benefits

First, Plaintiff must show that she "is entitled to an FMLA benefit." *Adams,* 789 F.3d at 427. To qualify for FMLA benefits, an employee must suffer from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A serious health condition

is "an illness, injury, impairment, or physical or mental condition" involving inpatient care or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.113 (explaining serious health condition definition).

> A serious health condition involving continuing treatment by a health care provider includes . . . [a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves . . . [t]reatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or [t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a)(1)–(2). Upon review of the record, there is a genuine dispute whether Plaintiff suffered from a qualifying serious health condition under the FMLA. Determination of this fact is for a jury, not the Court.

Plaintiff alleges she was an employee eligible to take leave for a serious health condition; that her "condition qualifies as a serious health condition under the FMLA because she was receiving ongoing and continuing treatment by her health care provider"; and that she suffered from an abdominal condition called diastasis recti[1]

---

[1] The Complaint is devoid of any reference to diastasis recti. *See generally* (Doc. No. 1-1). Instead, in the Complaint, Plaintiff alleges she "suffered from a physical impairment related to excess skin following significant weight loss, which caused chronic irritation, pain, and limited her mobility – particularly in standing, walking, and physical activity." (Doc. No. 1-1 ¶ 12). However, Defendant raised diastasis recti in its arguments for summary judgment without challenging it as outside the Complaint's allegations, and the parties have briefed the issue. Therefore, the Court finds a constructive amendment of the Complaint to include the allegation of

and related functional impairments. (Doc. Nos. 1-1 ¶¶ 38, 41, 48; 19 at 4).

In support of these claims, Plaintiff alleges the following. Plaintiff was provided with a "belly binder" to manage her abdominal condition after the birth of her last son, presumably by her labor and delivery healthcare providers. (Doc. No. 14-5 at 146:11–13). An initial FMLA certification form that her primary-care physician ("PCP") completed mentions "diastasis recti." (Doc. No. 14-17 at 2). Plaintiff previously took intermittent FMLA leave partly for back pain and claims her back pain resulted from her diastasis recti. (Doc. No. 19-2 at 94:14–18, 101:3–12). Plaintiff discussed the abdominal condition and surgery with her PCP in May 2023. (Doc. No. 14-5 at 145:4–22). The FMLA certification form Defendant approved noted, Plaintiff "is undergoing abdominal surgery due to umbilical intestinal protrusion." (Doc. No. 14-15 at 3). When Plaintiff followed up with her PCP after the surgery, the PCP noted that the appointment was "a follow-up visit after having abdominoplasty for diastasis recti." (Doc. No. 22-6). Though the surgery was part of a cosmetic surgeon's "Mommy Makeover" package, it included tightening of the abdominal muscles. (Doc. No. 14-5 at 112:6–14).

Defendant argues that Plaintiff has failed to establish that she is entitled to FMLA benefits because Plaintiff underwent cosmetic surgery, which falls under the cosmetic-procedure exception to the FMLA. (Doc. No. 14 at 18–20). Indeed, cosmetic treatments are generally excepted from the FMLA and Plaintiff's complaint does not define her "condition," nor does it mention "diastasis recti" or "back pain." Further,

---

diastasis recti. *See Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 227 (4th Cir. 2001); *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

Plaintiff never asked her cosmetic surgeon to complete the FMLA certification that she submitted to Defendant, including the form that Defendant approved; Plaintiff's "Mommy Makeover" package included a tummy tuck and breast lift; and Plaintiff acknowledged the surgery was an elective procedure. Nevertheless, Defendant's argument falls short because in the light most favorable to the Plaintiff, a genuine issue of material fact exists as to whether Plaintiff underwent a solely cosmetic surgical procedure. Plaintiff had her muscle repaired and the skin flap removed (Doc. No. 14-5 at 122:1–2); Plaintiff came across Mia Aesthetics after talking to her provider about what it would take to get the muscle repair done (Doc. No. 23-4 at 111:9–17); and Plaintiff mentioned to co-workers that she might have her muscle repaired (Doc. No. 23-4 at 131:10–25).

There is also a genuine issue of material fact as to whether Plaintiff's alleged serious health condition required continuing treatment. *See* 29 C.F.R. § 825.115 (defining continuing treatment). As mentioned, Plaintiff was provided with a belly binder very soon after the birth of her last son. After her surgery, Plaintiff followed up with her cosmetic surgeon and later with her PCP. (Doc. No. 14-5 at 121:12–14). Her two follow-ups with the surgeon occurred approximately four days after the surgery and one month after the surgery. *Id.* at 121:17–20. Under 29 C.F.R. § 825.115, a genuine dispute of material fact exists as to whether Plaintiff had a serious health condition involving continuing treatment.

For these reasons, the Court concludes that there is a genuine issue of material fact as to whether Plaintiff is entitled to FMLA benefits.

b. <u>Element Two: Interference with Provision of FMLA Benefits</u>

Second, Plaintiff must show that her employer interfered with the provision of her FMLA benefits. *Adams,* 789 F.3d at 427. "Interfering with the exercise of an employee's rights would include . . . discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). Employers may interfere with FMLA benefits without actually denying FMLA leave requests. *See Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 303 n.5 (4th Cir. 2016) (noting employer's approval of FMLA leave "does not automatically foreclose [employee's] interference claim"); *accord Kelly v. City of Charlotte, N.C.*, No. 3:24-CV-0008, 2025 WL 2180666, at *7 (W.D.N.C. May 31, 2025), *report and recomm. adopted*, No. 3:24-CV-8-MOC-SCR, 2025 WL 2177192 (W.D.N.C. July 31, 2025).

Defendant argues that "Plaintiff cannot establish that [Defendant] interfered with her ability to exercise her rights under the FMLA" because Defendant granted Plaintiff "the full amount of continuous FMLA leave that she requested in the summer of 2023." (Doc, No. 14 at 20). But "courts within the Fourth Circuit have recognized employers may interfere with FMLA benefits in a variety of ways without denying leave requests." *Kelly*, 2025 WL 2180666, at *7 (collecting cases). The primary inquiry is whether a reasonable jury could find that Defendant discouraged Plaintiff from using FMLA leave, such that Defendant interfered with Plaintiff's FMLA benefits.

Here, the Court finds there is a genuine dispute over facts material to this element. Plaintiff claims her supervisor threatened not to renew her employment

contract if she took FMLA leave. (Doc. Nos. 19 at 1; 19-2 at 106:10–107:6; 19-22). On discovering Plaintiff intended to take FMLA leave, Plaintiff's supervisor attempted to shorten Plaintiff's employment contract by more than a month. (Doc. No. 19-8). The adjusted end date, July 15, 2023, was just two days before Plaintiff's FMLA leave was to commence. *Id.* After a discussion with her supervisor's supervisor, Plaintiff also shortened her FMLA leave request from six weeks to four weeks. (Doc. No. 19-2 at 105:4–25). Though "an employer may avoid [interference] liability if it shows it would have taken the contested adverse employment action regardless of the employee's FMLA leave," *Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 732–33 (4th Cir. 2022), the Court finds that viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute about whether Defendant interfered with Plaintiff's FMLA benefits by discouraging her from using those benefits. Accordingly, summary judgment would be inappropriate on that basis.

c. Element Three: Harm Caused by Alleged Interference

Third, Plaintiff must establish the interference caused harm. *Adams,* 789 F.3d at 427. The Court concludes there is a genuine dispute over whether the alleged interference caused harm.

Defendant contends it did not renew Plaintiff's employment contract as part of broader staffing cost cuts. (Doc. No. 14 at 5). The Court finds disagreement on that point given evidence indicating Defendant discouraged Plaintiff from taking FMLA leave before adding Plaintiff to a staffing reduction list in mid-July. (Doc. No. 14 at 5). Thus, a reasonable jury could find harm because Defendant attempted to shorten

Plaintiff's employment contract (Doc. No. 19-8) and ultimately terminated Plaintiff's employment on August 22, 2023, prior to her contractual end date. (Doc. No. 19-16).

Defendant also argues in its reply brief that Plaintiff has no right to reinstatement because her post-surgical restriction rendered her unable to perform the essential functions of a floor nurse. (Doc. No. 23 at 3) (citing 29 C.F.R. § 825.216(c) and *Boone v. Bd. of Governors of the Univ. of N.C.*, 858 F. App'x 622, 624 (4th Cir. 2021)). That argument does not resolve this claim at summary judgment. Plaintiff's interference theory does not rest solely on Defendant's refusal to restore her after her physical restriction; it rests independently on evidence that her supervisor shortened her contract and threatened non-renewal upon learning she intended to take leave, before any restriction was ever at issue. An employer that curtails an employee's right to reinstatement because she requested leave, rather than because of an intervening inability to perform the job, cannot rely on § 825.216(c) to excuse that conduct. Because a reasonable jury could find Defendant's actions were motivated by the leave request itself and not by any later-arising physical limitation, Defendant's essential-functions argument does not warrant summary judgment on this record.

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment as to Plaintiff's First Cause of Action for FMLA interference.

*2. FMLA Retaliation*

Employers cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). "Unlike interference claims, retaliation claims are proscriptive and,

therefore, employer intent is relevant." *Shipton v. Baltimore Gas & Elec. Co.*, 109 F.4th 701, 706 (4th Cir.), *cert. denied*, 145 S. Ct. 774, 220 L. Ed. 2d 275 (2024) (emphasis omitted). FMLA retaliation claims "are analogous to those derived under Title VII." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973)). "A plaintiff can demonstrate FMLA retaliation by either (1) producing direct and indirect evidence of retaliatory animus or (2) demonstrating 'intent by circumstantial evidence, which we evaluate under the framework established for Title VII cases in *McDonnell Douglas*.'" *Shipton*, 109 F.4th at 706.

Under the first avenue of proof, Plaintiff must "present[] direct or circumstantial evidence that raises a genuine issue of material fact" as to whether Plaintiff's FMLA leave "motivated [Defendant]'s adverse employment decision." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Direct evidence includes conduct or statements that "(1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested employment decision." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (quotation marks omitted).

Here, Plaintiff has set forth evidence that her supervisor attempted to shorten her employment contract after learning that Plaintiff had requested FMLA leave. (Doc Nos. 19-8; 19-22). Plaintiff claims her supervisor directly threatened not to renew her employment contract if she took FMLA leave. Further, Plaintiff shows her termination was effective on the last day of her FMLA leave. Plaintiff has, therefore, carried her burden at summary judgment by "presenting direct or circumstantial

evidence that raises a genuine issue of material fact" as to whether Plaintiff's FMLA leave motivated Defendant to terminate her employment. *Diamond*, 416 F.3d at 318. Indeed, a reasonable jury could find that Defendant's statements and conduct (1) directly reflect a discriminatory attitude in the FMLA leave context and (2) bore directly on the decision to terminate Plaintiff on the last day of her FMLA leave.

Because the Court finds a genuine dispute of material fact in the direct evidence context, it need not address the *McDonnell Douglas* framework, although it would reach the same result under that framework. The Court, therefore, will deny Defendant's Motion for Summary Judgment as to Plaintiff's Second Cause of Action for FMLA retaliation.

**B. Plaintiff's Claims Under the Americans with Disabilities Act**

Plaintiff brings three theories under the ADA: disability discrimination, failure to accommodate, and retaliation.

*1. Disability Discrimination*

To establish a claim for disability discrimination, a plaintiff must show "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (alteration in original). "Under the ADA, a 'disability' may take any of the following forms: (1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being

regarded as having such an impairment' (the 'regarded-as' prong)." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (quoting 42 U.S.C. § 12102(1)).

Plaintiff advances two independent bases for disability: her diastasis recti and related post-surgical restriction, and her anxiety, depression, and migraines.

a. The Post-Surgical Restriction

Plaintiff's post-operative lifting, pushing, and pulling restriction lasted three weeks and was tied to a mostly elective procedure after which Plaintiff was cleared to return to work. A temporary impairment may substantially limit a major life activity only if it is "sufficiently severe." *Summers*, 740 F.3d at 329. In *Summers*, the plaintiff had suffered multiple leg fractures and was told he would not walk normally for at least seven months. *Id.* at 327. The Fourth Circuit concluded that the "serious impairment" plaintiff alleged was "severe enough to qualify" as a disability under the ADA. *Id.* at 330.

Here, Plaintiff's three-week lifting/pushing/pulling restriction following surgery, after which she was fully cleared, does not approach that severity, and no reasonable jury could find it "sufficiently severe" to substantially limit a major life activity. Plaintiff likewise cannot proceed under the "record of" prong as to this condition, as the record contains no medical record or other evidence establishing a history or classification of Plaintiff having a substantially limiting impairment related to her surgical procedure. Plaintiff further testified she was not certain any such diagnosis exists in her records; that she did not tell Defendant she was disabled; that she did not consider herself disabled in the summer of 2023; and that she does

not consider herself disabled today. (Doc. No. 14-5 at 146:3–24; 167:18–168:4). Further, Plaintiff has expressly disclaimed the "regarded as" prong in her summary judgment briefing. Accordingly, the post-surgical restrictions cannot support Plaintiff's ADA discrimination claim as a matter of law.

b. Plaintiff's Anxiety, Depression, and Migraines

Plaintiff's anxiety, depression, and migraines present a closer question on the disability element. These conditions were diagnosed by a treating provider, treated with prescription medication, and the subject of a psychiatric referral, and Defendant itself approved six months of intermittent FMLA leave for them. Plaintiff also testified these conditions affect her concentration, sleep, and ability to work through an episode. Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could find these are qualifying impairments.

Even so, Plaintiff's discrimination claim fails at the causation element. The evidence of record through a favorable lens to the Plaintiff ties Defendant's decision not to renew Plaintiff's contract to two things only: her request for, and threatened denial of, FMLA leave for her July 2023 surgery, and the physical restriction that followed it. Plaintiff's supervisor's alleged threat concerned the surgical leave specifically; the July 16, 2023 staffing-reduction list and the termination letter both cite budget cuts tied to the broader CTP reduction, not Plaintiff's chronic conditions; and Plaintiff had used intermittent leave for her anxiety, depression, and migraines for months before the events at issue without any adverse consequence. No evidence in this record connects Defendant's staffing decision to Plaintiff's mental-health

conditions, as opposed to her FMLA leave-taking for the surgery. Accordingly, even assuming Plaintiff's anxiety, depression, and migraines are qualifying disabilities, her ADA discrimination claim fails for lack of a genuine dispute on causation, and the Court will grant Defendant's Motion for Summary Judgment as to disability discrimination.

*2. Failure to Accommodate*

A failure-to-accommodate claim requires a plaintiff to show "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodation." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). "[T]here must be a logical bridge connecting the employee's disability to the workplace changes he requests." *Kelly v. Town of Abingdon*, 90 F.4th 158, 167–68 (4th Cir. 2024).

The only accommodation Plaintiff requested—temporary charge-nurse duties in light of the fifteen-pound lifting, pushing, and pulling restriction—was tied exclusively to her post-surgical condition, not to her anxiety, depression, or migraines. As explained above, that post-surgical restriction was transitory and minor and does not constitute a qualifying disability under the ADA. Because the accommodation Plaintiff requested has no logical bridge to any condition that qualifies as an ADA disability, her failure-to-accommodate claim fails at the threshold element regardless of whether Defendant's stated justification for denying

the request, or its treatment of comparator nurses, would otherwise create a triable issue on reasonableness. For these reasons, the Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's claim for failure to accommodate.

*3. Retaliation*

A plaintiff may establish ADA retaliation by direct or indirect evidence. *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001). "To avoid summary judgment, the plaintiff 'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Id.* at 392 (citation omitted). In the alternative, a plaintiff may prove retaliation through the familiar burden-shifting method including analysis of the prima facie case, any legitimate non-discriminatory reason provided by the defendant, and a determination whether the reason is pretextual. *See id.*

Plaintiff's retaliation theory fails on undisputed timing alone, regardless of the method of proof considered. Defendant's decision not to renew Plaintiff's contract was communicated in a termination letter dated August 17, 2023, citing budget cuts. Plaintiff's accommodation request—the return-to-work letter describing her lifting restriction—was not transmitted to Defendant until August 21, 2023, four days after the termination letter issued. An employer cannot retaliate against protected activity that has not yet occurred. Because the undisputed record shows Defendant's decision, and the letter communicating it, predate Plaintiff's accommodation request, no reasonable jury could find the causal connection ADA retaliation requires. Summary judgment is therefore appropriate on this claim as well.

For these reasons, the Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's Third Cause of Action for ADA violations.

### C. Wrongful Discharge in Violation of North Carolina Public Policy

Plaintiff's Fourth Cause of Action invokes the North Carolina Equal Employment Practices Act as the source of public policy underlying her wrongful-discharge claim. Courts apply the ADA's evidentiary framework to state-law wrongful discharge claims premised on disability. *See, e.g.*, *Malik v. Amazon.com Prices, LLC*, No. 3:21-CV-627-MOC-DCK, 2024 WL 150763, at *9 (W.D.N.C. Jan. 12, 2024), *aff'd sub nom. Malik v. Amazon.com Servs., LLC*, No. 24-1135, 2025 WL 2651300 (4th Cir. Sept. 16, 2025). For the same reasons set forth above with respect to Plaintiff's ADA discrimination claim, no reasonable jury could find on this record that Plaintiff was disabled within the meaning of the ADA and the NCEEPA, or that Defendant's decision not to renew her contract was causally connected to any qualifying disability rather than to her FMLA leave-taking. Accordingly, Plaintiff's wrongful discharge claim fails on that basis.[2]

For these reasons, no reasonable jury could return a verdict in favor of Plaintiff

[2] Further, though not briefed by the parties, it appears that Plaintiff was not an at-will employee under North Carolina law because her employment contract specified a definite period of employment. Because Plaintiff was not an at-will employee, she cannot sustain an action for wrongful discharge under North Carolina law. *Freeman v. Duke Power Co.*, 114 F. App'x 526, 532 (4th Cir. 2004) ("The Supreme Court of North Carolina has recognized a cause of action for wrongful discharge in violation of public policy as a narrow exception to North Carolina's long-standing employment-at-will doctrine. However, '[t]he tort of wrongful discharge arises only in the context of employment at will.'" (first citing *Coman v. Thomas Mfg. Co.,* 325 N.C. 172, 381 S.E.2d 445, 447 (1989), then quoting *Claggett v. Wake Forest Univ.*, 486 S.E.2d 443, 448 (N.C. Ct. App. 1997))); *see also Wagoner v. Elkin City Schs.' Bd. of Educ.*, 440 S.E.2d 119, 125 (N.C. Ct. App. 1994).

on her claim for wrongful discharge in violation of North Carolina public policy. Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's Fourth Cause of Action for state-law wrongful discharge.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. 13) is **GRANTED IN PART** and **DENIED IN PART**;
2. Counts III and IV are **DISMISSED**; and
3. This case shall **proceed toward trial on the merits of the remaining claims, Counts I and II**, in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED.**

Signed: September 18, 2026

Matthew E. Orso
United States District Judge